IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| FELICIA C JOHNSON, | |
|---|---|
| Plaintiff, | 8:15CV138 |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | MEMORANDUM AND ORDER |
| Defendant. | |

Plaintiff Felicia C. Johnson ("Johnson"), seeks review of the decision by the defendant, Carolyn W. Colvin, Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Supplemental Security Income disability benefits under Title XVI of the Act. See 42 U.S.C. § 1381. After carefully reviewing the record, the Commissioner's decision is affirmed.

## I. PROCEDURAL BACKGROUND

Johnson filed for SSI disability benefits on March 16, 2012, claiming she is unable to work due to disability and pain caused by right carpal tunnel syndrome, a left ankle injury, and discogenic and degenerative back disorders, and mental health impairments caused by antisocial personality disorder and depression. (Filing No. 8-3, at CM/ECF pp. 2-4). Counsel was appointed on April 12, 2012. (Filing No. 8-4, at CM/ECF p. 2). Johnson's application was denied on May 11, 2012. (Id. at CM/ECF pp. 4-7). Plaintiff requested reconsideration and that request was denied on June 15, 2012. (Id. at CM/ECF pp. 8-9). Plaintiff requested a hearing. The hearing commenced on June 28, 2013 as scheduled, (Filing No. 8-2, at CM/ECF pp. 36-45), but it was continued because Johnson had relapsed and used cocaine three weeks prior to the hearing. The hearing reconvened on October 22, 2013. (Id. at CM/ECF pp. 48-78). Johnson and a vocational rehabilitation expert ("VE") testified at the hearing. (Id. at CM/ECF p. 47).

On December 16, 2013, the ALJ issued her written decision stating Johnson was not disabled. ([Filing No. 8-2, at CM/ECF pp. 16-27](#)). Plaintiff timely filed a Request for Review of the ALJ's decision. ([Id. at CM/ECF pp. 10](#)). After receiving additional evidence at Johnson's request, ([Id. at CM/ECF p. 7](#)), the Appeals Council denied the request on February 24, 2015. ([Id. at CM/ECF p. 3](#)). Plaintiff timely filed her appeal in this court on April 23, 2015. ([Filing No. 1](#)).

## II. THE ALJ's DECISION

The ALJ evaluated Johnson's claim through the five-step sequential evaluation process to determine whether Johnson was disabled. [20 C.F.R. §416.920(a)(4)](#). As reflected in her decision, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since March 16, 2012, the application date ([20 CFR 416.971](#) et seq.).

2. The claimant has a severe impairment; specifically, depression. ([20 CFR 416.920(c)](#)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 ([20 CFR §§ 416.920(d)](#), [416.925](#) and [416.926](#)).

4. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is able to understand, remember, and carry out simple, routine, and repetitive tasks; is limited to simple work-related decisions; is unable to respond appropriately to co-workers and the public, though she can respond appropriately to supervisors on an occasional basis; and her time off task can be accommodated by the normal and customary breaks taken in a routine work setting.

5. The claimant has no history of past relevant work ([20 CFR 416.965](#)).

6. The claimant was born on March 25, 1968 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed. (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English. (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant has not performed past relevant work. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

(Filing No. 8-2, at CM/ECF pp. 18-26).

## III. ISSUES RAISED FOR JUDICIAL REVIEW

Johnson requests judicial review of the ALJ's decision, asserting the following arguments support her claim for reversal:

1) The ALJ erroneously failed to recognize Johnson's physical impairments as "severe."

2) The ALJ's RFC determination is not supported by substantial evidence based on the record as a whole.

3) The ALJ submitted an inaccurate and incomplete hypothetical to the vocational expert, and as a result, the ALJ cannot rely on the vocational expert's responsive testimony.

(Filing No. 17).

## IV. THE RECORD AND PROCEEDINGS BEFORE THE ALJ

Johnson was 44-years-old when she submitted her application for benefits. She had completed 11 years of education, but did not graduate from high school. Although she began classes to earn her GED, she had not completed that program as of the date of her hearing before the ALJ. ([Filing No. 8-2, at CM/ECF pp. 71](), [80](); [Filing No. 8-7, at CM/ECF pp. 32](), [34]()).

At the time of her hearing, the plaintiff was living with a friend and characterized herself as "homeless" since October 1, 2013. ([Filing No. 8-2, at CM/ECF p. 52]()). Prior to that date, she lived alone in a rented room in a house. ([Id. at CM/ECF p. 53]()).

Johnson has depression and an antisocial personality disorder, and she abuses cocaine and alcohol. As of May 1, 2012, she had smoked tobacco daily for the past 20 years. Johnson has mild lumbar degenerative disc disease, right carpal tunnel syndrome, hypertension, and obesity ([Filing No. 8-7, at CM/ECF pp. 40](), [44-45](), [93]()). Plaintiff fractured her left ankle in a 2008 car accident. Surgery was performed on the ankle. Plaintiff claims she has chronic left ankle pain and swelling following that injury and surgery. ([Id., at CM/ECF p. 25]()). She also complains of right hand pain following the 2005 surgery on her right carpal tunnel. ([Filing No. 8-6, at CM/ECF p. 20]()).

Johnson claims she has muscle spasms in her back, legs, feet, and thighs, and as a result, she cannot lift more than 5 or 10 pounds, and cannot sit for more than 2 hours or stand for more than 5-10 minutes at a time, or walk for more than three blocks without low back pain. Johnson states it takes her longer than the average person to do daily activities due to pain. ([Filing No. 8-6, at CM/ECF pp. 12-16](), [20]()). In response to interrogatories, Johnson's mother stated Johnson's reaction to stressful situations is "normal"; ([Id. at CM/ECF p. 18]()), she can take care of herself, her grandchildren, and her

mother's dogs; she goes for walks two days a week; and she can perform her household chores "as well as you or me." (Id. at CM/ECF p. 17).

> In her application for disability benefits, Johnson claimed:
>
> I can't take baths because I have a hard time getting out of the tub, so I take showers only. I can cook, but it takes me longer than the average because I have to sit down and rest due to unstoppable pain in legs, feet, hands. lower back and muscle spasms all over.
> . . .
> Some days I need help with laundry, dishes, trash removal due to the weight. I need help with cleaning because I get tired and in a lot of pain from bending, standing, walking, because of lower back pain. Spasms in legs, feet, back and right hand.

(Id. at CM/ECF p. 24).

Beginning in 2004 and until March 29, 2012, Johnson received treatment for her physical symptoms at the Douglas County Primary Health Center. This treatment was sporadic, with no appointments between 2004 and 2009, and no appointments between July 2009 and January of 2012. In addition, Johnson was a "no call/no show" for scheduled appointments in August of 2009, and on April 5, 2012. (Filing No. 8-7, at CM/ECF pp. 15, 20), and she cancelled her physical therapy appointment scheduled for February 24, 2012. (Id. at CM/ECF p. 23).

When Johnson went to the Primary Health Center for treatment in 2012, she complained of back pain and left ankle pain. The February 2012 treatment notes state Johnson had failed take her medications as prescribed, and she was counseled to be compliant with physical therapy, diet, and medications. (Filing No. 8-7, at CM/ECF p. 12). When Johnson attended physical therapy on March 5, 2012, she exhibited "over-reactive behavior to very light touch with slight movement of the subcutaneous tissue," but was "able to ambulate with a symmetrical gait pattern," and "don[ned] her coat without any signs of pain." (Id. at CM/ECF p. 22). The physical therapist concluded

Johnson "exhibits over-reactive behavior/her signs are out of proportion to her physical findings," an assessment echoed by the Physician's Assistant in the Primary Healthcare Clinic. ([Id. at CM/ECF pp. 12](), [22]()). The following day, March 6, 2012, Johnson's back was X-rayed and revealed "No significant degenerative disc disease," with only "Mild L4/5 and L5/S1 degenerative facet arthropathy." ([Id. at CM/ECF p. 21]()).

During the disability examination performed on May 1, 2012, Johnson complained of left ankle pain, back pain, and spasms, and pain in her right carpal tunnel. She was wearing a wrist brace. Johnson reported she was receiving therapy for addictions to alcohol and crack cocaine. Although Johnson did not appear to be in acute distress, her range of motion was difficult to assess due to the pain behaviors she exhibited when asked to move. ([Filing No. 8-7, at CM/ECF p. 27]()). Johnson was able to follow commands during the examination, and stated she remains able to balance a checkbook. ([Id. at CM/ECF p. 29]()).

A Physical Functional Capacity Evaluation (FCE) was performed on May 9, 2012. Johnson is able to frequently lift and/or carry up to 10 pounds, stand and/or walk 2 hours and sit 6 hours in an 8-hour workday. Repetitive movement of her right wrist and left ankle must be limited, and she must avoid even moderate exposure to hazards, and can occasionally climb, balance, stoop, kneel, crouch, and crawl. But she has no limitations in hand manipulation, vision, communication, or environment. While Johnson wore a brace on her right wrist, the actual use of that hand and wrist were not limited. The examining physician noted:

> Bulk of evidence shows mild to moderate findings regarding back and ankle pain. Minimal records and limited hx of treatment show that claimant has a hx of noncompliance for medications and PT. Both records and CE findings note that claimant would improve with PT and exercise. No assistive devices, normal gait and station. Claimant is partially credible and capable of work as outlined within [the Physical FCE].

([Filing No. 8-7, at CM/ECF p. 63](#)).[1]

Johnson sought medical treatment on July 24, 2012, complaining of mild lumbar spine and paraspinal tenderness and carpal tunnel syndrome. ([Filing No. 8-7, at CM/ECF p. 109](#)). She had lost her wrist brace, and was given another, but she was warned not to lose it again because it would not be replaced. She was referred to physical therapy for treatment of her back pain. ([Id.](#)). Although she returned for treatment of other medical conditions, there is no record of further treatment for carpal tunnel syndrome, and she did not request further treatment for her back until October 19, 2012. ([Id. at CM/ECF p. 110](#)). At that time, she complained of back and shoulder pain, with pain radiating down her arms bilaterally, and she demanded an MRI, stating "I don't care what anyone says. They need to give me an MRI." ([Id.](#)). Johnson was prescribed medication, but an MRI was not ordered. Johnson's complaints did not match the "benign" x-rays taken in March of 2012. ([Id. at CM/ECF p. 111](#)). Johnson did not seek further treatment for her back. ([Id. at CM/ECF p. 112](#)).

Johnson obtained treatment, free of charge, for mental health symptoms at the Douglas County Community Mental Health Center, beginning in 2003 and until August 1, 2012. As with her treatment for physical problems, her mental health care and treatment was sporadic, with no treatment between 2004 and 2009, and no treatment between July of 2009 and January of 2012. ([Filing No. 8-7, at CM/ECF p. 72](#)).

A mental health RFC was performed on May 9, 2012. The examiner concluded:

A. Understanding and Memory: CE examiner reports that claimant had difficulty recalling information for long-term memory. Short-term memory was adequate. Immediate memory was lacking.

---

[1] This FCE was confirmed by a medical records review on August 5, 2012. ([Filing No. 8-7, at CM/ECF p. 93](#)).

7

- B: Sustained Concentration and Persistence: CE examiner states that her mood and affect were irritable. She was able to maintain concentration, but processing was slow.

- C: Social Interaction: CE examiner states that claimant does not have the ability to relate appropriately to co-workers and supervisors. She has poor interpersonal skills, has anger and resorts to violence.

- D: Adaptation: Per CE examiner: claimant would not be able to adapt to changes in the environment. Due to lack of motivation.

(Filing No. 8-7, at CM/ECF p. 54). The consultant noted:

> Claimant would benefit from a dual program focusing on substance abuse and mental health concerns. She is currently not participating in any mental health programs, not taking any medication etc. Claimant appears to have a chemical dependency problem although it is not material. It is reasonable to expect w/ continued recovery time and treatment claimant would be capable of work that is not complex but more routine in nature by 3/2013.

(Id. at CM/ECF p. 49).

Johnson received a mental health assessment on June 28, 2012. During that appointment, Johnson's urine tested positive for cocaine. (Filing No. 8-7, at CM/ECF p. 88). The pretreatment assessment concludes Johnson must begin a 12-Step or outpatient treatment program to battle her chemical dependency. (Id. at CM/ECF p. 85). When Johnson returned for treatment on July 24, 2012, she admitted she was still drinking alcohol, but she denied using drugs. (Id. at CM/ECF p. 74). Yet her urine again tested positive for cocaine. (Id. at CM/ECF p. 77).

Johnson was treated at the Douglas County Community Mental Health Center on September 6, 2012. She denied using street drugs, but her urine tested positive for cocaine. (Filing No. 8-7, at CM/ECF pp. 95-96). Zyprexa was prescribed to stabilize Johnson's mood and decrease her paranoia. When seen in October of 2012, her mood had improved. Celexa was prescribed. The doctor recommended that Johnson return within

three to four weeks, but she was not seen again until December 17, 2012. Johnson was cooperative, with linear thinking, and no overt psychosis. Doctor Nitcher concluded Johnson had "mild depression," (Id. at CM/ECF p. 99), and she needs to pursue 12-step meetings for her ongoing drug addiction. (Id. at CM/ECF p. 100). In March of 2013, Johnson asked for a note stating she was unable to attend school due to her disability. (Id. at CM/ECF p. 101). When seen on March 28, 2013, Johnson reported she had stopped taking her prescribed Celexa. The prescription was discontinued. (Id. at CM/ECF pp. 102-03). During doctor and therapy visits in April and May of 2013, Johnson's mood was euthymic, and although she complained of forgetfulness and anxiety, she was open and engaged during her therapy session. (Id. at CM/ECF pp. 104-106; Filing No. 8-8, at CM/ECF p. 86).

But in response to an RFC questionnaire completed on June 25, 2013, Dr. Nitcher stated Johnson is easily overwhelmed and has a markedly limited ability to handle stress or work at a normal pace, complete a normal work day or work week without interruption from psychologically based symptoms, perform at a consistent pace, maintain a schedule with regular attendance, and get along with co-workers. He opines that Johnson cannot work, and if she tries, she will likely to miss three or more days of work per month, and will be prone to uncontrolled crying spells during a normal work day. Dr. Nitcher's does not mention Johnson's addiction to drugs and alcohol when rendering his opinions regarding Johnson's impairments. (Filing No. 8-8, at CM/ECF pp. 65-69, 82).

Thereafter, Dr. Nitcher reported Johnson had mild depression in August of 2013, (Filing No. 8-8, at CM/ECF p. 84), and Johnson's counseling records from September of 2013 state she was anxious but stable, sleeping better with less irritability, and was helping her mom and daughter while awaiting her court date. (Id. at CM/ECF p. 88).

9

During the court hearing held on October 22, 2013, Johnson testified that she sees Dr. Nitcher two to three times per month. ([Filing No. 8-2, at CM/ECF pp. 57-58](#)). Johnson stated she was not mentally stable enough to return to work, and lacked the ability to regularly attend substance abuse treatment due to her depression. ([Id. at CM/ECF p. 63](#)). Johnson testified that she cannot stand or sit for more than 30 minutes without discomfort, ([Id. at CM/ECF pp. 66-69](#)), but she can care for herself. ([Id. at CM/ECF p. 70](#)). She further testified that she attends substance abuse treatment approximately 14 days a month (rather than daily), ([Filing No. 8-8, at CM/ECF p. 62](#)), but the records from the program indicate she attended only twice in June of 2013 and only three times in July of 2013. By the end of July, the program reported "further outreach will be done in the month of August and if no contact has been made, Felicia will be discharged from day program." ([Filing No. 8-6, at CM/ECF pp. 90-93](#)).

After considering the records and Johnson's testimony, the ALJ asked the testifying VE to assume a person of Johnson's age, education, and work experience is able to work at a light level "with a sit/stand option that can be exercised every 30 minutes without leaving the workstation; simple, routine, repetitive work; no fast-paced production; occasional ramps and stairs; no ladders, ropes, or scaffolds; occasional bending and stooping." ([Filing No. 8-2, at CM/ECF pp. 74-75](#)). The ALJ asked the VE if work is available in significant numbers in the national economy for such a person. ([Id. at CM/ECF p. 75](#)). The VE responded:

> Such an individual could work as a cashier II, DOT 211.462-010, light, SVP 2. Omaha or Nebraska numbers of 15,000; U.S. numbers of 850,000. And information clerk, DOT 237.367-018, light, SVP 2. Nebraska numbers of 1,000; U.S. numbers of 97,000. And a parking lot attendant, DOT 915.473-010, light, SVP 2. Nebraska numbers of 1,000; U.S. numbers of 80,000.

([Id.](#)). The VE further testified that the same jobs would be available if the person was limited to only occasional fine and gross manipulation with the dominant right hand. ([Id.

at CM/ECF p. 76). But if the person missed two days a week due to mental health symptoms, work in significant numbers would not be available in the national economy. (Id.).

VI. LEGAL ANALYSIS

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. Hogan v. Apfel, 239 F.3d 958, 960 (8th Cir. 2001).

> If substantial evidence on the record as a whole supports the Commissioner's decision, it must be affirmed. Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006). "'Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion.'" Smith v. Barnhart, 435 F.3d 926, 930 (8th Cir. 2006) (quoting Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). "The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).

Schultz v. Astrue, 479 F.3d 979, 982 (8th Cir. 2007). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. Wildman v. Astrue, 596 F. 3d 959 (8th Cir. 2010). The court should not overturn an ALJ's decision so long as it is in the "zone of choice" even if the court disagrees with the ALJ's conclusion. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011).

Johnson claims the court must reverse the Commissioner's decision because the ALJ erroneously failed to recognize plaintiff's physical impairments as "severe;" the ALJ's RFC determination was unsupported by substantial evidence based on the record as a whole; and the hypothetical question posed to the VE was inaccurate and incomplete

11

and cannot support the ALJ's decision. For the reasons discussed below, each of these arguments for reversal will be denied.

1) <u>Failure to Recognize Plaintiff's Physical Impairments as "Severe."</u>

The ALJ found Johnson has a severe impairment; specifically, depression. But she further concluded that this impairment does not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 46.920(d), 416.925 and 416.926). Johnson claims the ALJ errored in failing to find her physical impairments were "severe" as defined by the social security listings. The burden of proof is on the plaintiff to establish that her impairment meets or equals a listing. Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004).

Johnson complained of low back pain, right carpal tunnel syndrome, and chronic left ankle pain. However, her medical records reflect she sought almost no treatment for these alleged physical problems. Johnson argues the ALJ failed to consider whether Johnson's treatment was sparse due to the lack of transportation or funds, but there is no evidence that transportation was a problem, or that Johnson attempted to obtain treatment, but was denied due to insufficient funds or insurance. See, e.g., Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir.1999) (ALJ appropriately discounted claimant's argument that he could not afford medical care absent evidence he sought and was denied low-cost or free care); Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir.1989) (although lack of funds may sometimes justify failing to seek medical care, there was no evidence plaintiff had told his physicians he could not afford the prescription at issue and was denied the medication).

The X-rays of Johnson's back showed no physical basis for the intensity of her self-reported pain; nerve conduction studies were not performed for her alleged carpal

tunnel syndrome; Johnson did not consistently wear her wrist brace (she was warned that if she lost it again, it would not be replaced); and there is little or nothing of record explaining Johnson's alleged ankle pain and limitations. Due to her exaggerated complaints of pain, as noted by her own treating medical providers, she did not fully participate in her prescribed physical therapy. And the physical disability testing for her disability claim was limited due to Johnson's complaints of pain.

Under the totality of the facts presented, the ALJ did not error in finding Johnson failed to prove her physical impairments were severe, and that considered either alone or in combination, those impairments equaled a listing.

2) RFC Based on the Record as a Whole.

Johnson claims her physical pain, and her anxiety, irritability, memory issues, and depression so limit her ability to work that she cannot perform a job in the national economy. Any determination of impairment arising from these subjective complaints rests, as a threshold matter, on evaluating the plaintiff's credibility. Ellis v. Barnhart, 392 F.3d 988, 995-96 (8th Cir. 2005); see also Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) ("Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility.").

The ALJ considered "the evidence as required by 20 CFR 416.929 and SSR 96-7p, incorporating and expanding upon Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), (Filing No. 8-2, at CM/ECF p. 22). After doing so, the ALJ concluded, "the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment in this case." (Id.).

"If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). As explained by the ALJ and fully supported by the record, Johnson did not consistently take her medications, failed to attend some scheduled appointments, did not fully participate in physical therapy, did not consistently seek medical or mental health treatment, and was not truthful with her medical and mental health providers concerning her use of illegal drugs (cocaine). Her statements regarding physical pain were not supported by the "mild" degenerative changes depicted on the X-rays of her lumbar spine. Her own medical providers concluded her medical complaints were exaggerated. And based on her mother's statement, Johnson is able to care for herself and is able to perform tasks and movements beyond her self-reported statements to her medical providers and within her disability application.

The ALJ's credibility findings are explained in his opinion and are supported by substantial evidence on the record as a whole. Andrews v. Colvin, 791 F.3d 923, 929 (8th Cir. 2015). Plaintiff's argument for reversal based on the ALJ's alleged failure to adequately evaluate the plaintiff's credibility will be denied. See, e.g., Milam v. Colvin, No. 14-3240, 2015 WL 4491742, at *6 (8th Cir. July 24, 2015) (affirming the ALJ's decision discrediting the plaintiff's subjective complaints where the plaintiff received only conservative treatment and medication, and received no treatment for over 4 years);

14

Andrews, 791 F.3d at 929 (8th Cir. 2015) (affirming the denial of benefits where the ALJ cited reasons for discounting the plaintiff's credibility, including his daily activities, and non-compliance with medication regimens); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (holding the failure to request pain medication is an appropriate consideration when assessing the credibility of a claimant's complaints of pain.); Johnson v. Apfel, 240 F.3d 1145, 1148-49 (8th Cir. 2001) ("[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility").

Johnson argues, "In reaching the RFC finding, the ALJ did not properly weigh the medical evidence of record." (Filing No. 17, at CM/ECF p. 11). The ALJ discounted the opinion of Johnson's treating psychiatrist, Dr. Nitcher, his listing of Johnson's marked limitations, and his conclusion that Johnson is unable to work. (Filing No. 8-8, at CM/ECF pp. 65-69). But according to Dr. Nitcher's records both before and after he provided his opinions, Johnson had mild depression, her thoughts were congruent, her mood was euthymic, and her complaints of anxiety and irritability were improving with medication and therapy. While Dr. Nitcher's records mention Johnson's alcohol and cocaine addiction, neither the doctor's records nor his RFC questionnaire responses address whether, and to what extent, Johnson's ongoing addiction and relapses contributed to her mental impairments. (Id. at CM/ECF pp. 82-86). In addition, despite Dr. Nitcher's assessment of marked limitations, he did not schedule regular treatment with Johnson--certainly not twice a month as testified to by Johnson.

Under the facts presented, the ALJ did not err in ignoring or discounting Dr. Nitcher's opinions. An ALJ may "discount or even disregard the opinion of a treating physician . . . where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000); see also Wildman, 596 F.3d at 964 (holding an ALJ was entitled to discount a treating physician's opinion where the claimant failed to abstain from using drugs and alcohol,

15

and the treating physician did not take the claimant's noncompliance into account when formulating and expressing his opinions).

Dr. Nitcher states Johnson is unable to work. While a "claimant's residual functional capacity is a medical question," (Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001)), stating that a claimant cannot work is not a medical opinion. Rather, it is an opinion on the application of the statute, a task that is assigned solely to the discretion of the Commissioner. See Brosnahan v. Barnhart, 336 F.3d 671, 676 (8th Cir. 2003) (ALJ properly discounted a psychologist's opinion that claimant could not work); Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) (psychiatrist's opinion that claimant could not be gainfully employed was not a medical opinion); Flynn v. Chater, 107 F.3d 617, 622 (8th Cir. 1997) (physician's opinion that claimant "may not be able to work in a competitive employment situation" not given weight).

Upon review of the record, the court finds the ALJ's decision is consistent with the governing law, is supported by the record, and is fully explained in the ALJ's written opinion. The decision is not subject to reversal for failing to correctly evaluate Johnson's record as a whole.

### 3) Ability to Perform Work in the National Market.

Johnson argues that since the ALJ's RFC determination was not supported by the record, the hypothetical question posed to the VE "is inaccurate, incomplete and unsupported by substantial evidence," the VE's response cannot provide "substantial evidence" supporting the ALJ decision. (Filing No. 17, at CM/ECF p. 14).

The claimant is entitled to disability benefits only if [she] is not able to perform other work." Bowen v. Yuckert, 482 U.S. 137, 142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987). At Johnson's hearing, the ALJ asked the VE hypothetical questions which

were wholly consistent with the ALJ's credibility determinations and the findings within Johnson's physical and mental RFCs. After careful review of the administrative record, including the VE's testimony, the court finds that substantial evidence supports the ALJ's finding that even though she has some impairments, Johnson remains able to perform a significant number of jobs existing in the national and state economies. See, e.g., [Welsh v. Colvin, 765 F.3d 926, 930 (8th Cir. 2014)](#) (holding testimony that 330 surveillance systems monitor and call out operator jobs existed in Iowa, and that claimant could perform "most" of those jobs was sufficient to prove the claimant was not disabled); [Hall v. Chater, 109 F.3d 1255, 1259 (8th Cir. 1997)](#) (340 jobs in state that would actually accommodate claimant's restrictions considered significant); [Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir.1988)](#) (500 jobs in region considered significant).

Upon review of the record as a whole, the court finds substantial evidence supporting the ALJ's decision.

IT IS ORDERED:

1) The decision of the Commissioner of the Social Security Administration is affirmed.

2) Judgment in accordance with this memorandum and order will be entered by separate document.

May 31, 2016.                               BY THE COURT:

                                            *s/ Cheryl R. Zwart*
                                            United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.